OPINION
{¶ 1} Appellant, Rodney J. Brown, appeals the judgment entered by the Ashtabula County Court of Common Pleas. Following a jury trial, Brown was convicted of abduction and assault.[1] Brown received a total prison term of four years for his convictions.
{¶ 2} In 2003, Brown was dating Lisa Hamilton. On February 22, 2003, Brown called Hamilton and asked her to pick him up at his brother's house. Hamilton did not pick him up. Later that day, Brown's brother gave him a ride to Hamilton's trailer.
 {¶ 3} Hamilton opened the door for Brown. Brown began accusing her of being with another man. In addition, he questioned her about why she failed to buy him cigarettes. He repeatedly punched her. He grabbed her one-year-old son from her arms and threw him onto the couch. Brown continuously pushed Hamilton down onto her couch and chair. He grabbed her by the back of her hair and banged her head into a picture on the wall. Hamilton indicated these events lasted about one-and-one-half hours.
 {¶ 4} In addition to the physical attacks, Brown threatened Hamilton. He told her that he would kill her if she called the police. He informed her that he was not afraid of the police or going to jail.
 {¶ 5} In order to end the attacks, Hamilton suggested they go to the Duke and Duchess gas station to purchase cigarettes. Brown eventually agreed to go to the gas station with her. She put her son in the car seat in her vehicle. Brown then screamed at her to get in the car. Hamilton got in the front passenger seat, and Brown drove to the gas station.
 {¶ 6} During the car ride, Brown continued accusing Hamilton of being with another man. Brown also threatened Hamilton, again warning her that if she called the police, he would kill her. They arrived at the Duke and Duchess gas station. Brown parked the car in a space in front of the store. Hamilton entered the store, while Brown remained in the car. Hamilton returned to the car and told Brown she needed her son to distract the clerk, because her debit card did not have enough funds to cover the cigarette purchase. At trial, she indicated this was not true, but she needed an excuse to get her son out of the car. Back inside the store, Hamilton convinced two young females to give her a ride to her sister's house. The store clerk let Hamilton out the rear exit, where she met the young females. A few minutes later, Brown entered the store looking for Hamilton. The clerk informed him that everyone had left.
 {¶ 7} The following day, the police found Hamilton's car parked outside her residence. They entered and arrested Brown.
 {¶ 8} Originally, a complaint was filed in the Ashtabula Municipal Court charging Brown with one count of kidnapping. An additional complaint was filed in municipal court charging Brown with one count of assault. On March 6, 2003, the kidnapping matter was bound over to the grand jury to consider the charge. The assault charge was also transferred to the Ashtabula County Common Pleas Court for judicial economy.
 {¶ 9} On March 20, 2003, Brown filed a motion for reduction of bond. On March 24, 2003, the trial court granted Brown's motion and reduced his bond. Brown posted bond and was released from jail. On April 17, 2003, Brown's bond was revoked, and he returned to jail.
 {¶ 10} On April 14, 2003, the Ashtabula County Grand Jury indicted Brown on one count of abduction, a third-degree felony, and one count of assault, a first-degree misdemeanor. On April 17, 2003, Brown was arraigned, and he pled not guilty to the charges against him.
 {¶ 11} On June 5, 2003, the state filed a bill of particulars. On June 10, 2003, the morning of trial, Brown filed a motion to dismiss, arguing his speedy trial rights had been violated. The trial court denied this motion.
 {¶ 12} A jury trial was held. Following the state's case-in-chief, Brown moved for acquittal on both counts pursuant to Crim.R. 29. The trial court overruled Brown's motion. The jury found Brown guilty of both counts of the indictment. Brown was sentenced to a four-year prison term for the abduction conviction. He was given a six-month term for the assault conviction. The trial court ordered that these sentences be served concurrently.
 {¶ 13} Brown timely appealed the judgment of the trial court. Initially, Brown's trial counsel, Attorney Humpolick, represented him on appeal. Attorney Humpolick filed Brown's appellate brief. Thereafter, Attorney Humpolick withdrew from representing Brown, and Attorney Makowski was appointed to represent him. Attorney Makowski filed a supplemental brief on behalf of Brown.
 {¶ 14} Brown's first assignment of error is:
 {¶ 15} "Appellant was forced to go to trial after his statutory speedy trial rights had expired."
 {¶ 16} Ohio's statutory speedy-trial rights are set forth in R.C.2945.71, which provides, in pertinent part:
 {¶ 17} "(C) A person against whom a charge of felony is pending:
 {¶ 18} "* * *
 {¶ 19} "(2) Shall be brought to trial within two hundred seventy days after the person's arrest."
 {¶ 20} Additionally, R.C. 2945.71(E) is Ohio's "triple-count" provision and provides:
 {¶ 21} "(E) For purposes of computing time under divisions (A), (B), (C)(2), and (D) of this section, each day during which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days."
 {¶ 22} Brown was arrested on February 23, 2003. The date of arrest is not counted when determining speedy trial time.[2] Brown was held in jail from February 24, 2003 until March 24, 2003, when his bond was reduced. The date the defendant posts bond and is released from jail counts as a day in jail for the triple-count provision.[3] Therefore, a total of twenty-nine days passed during this period. Applying the triplecount provision, this time counted as eighty-seven days.
 {¶ 23} Brown's bond was revoked on April 17, 2003. From March 24, 2003 until April 17, 2003, Brown was not in jail, thus this time is not subject to the triple-count statute. This period counted twenty-four days toward Brown's speedy-trial time.
 {¶ 24} After Brown's bond was revoked, he returned to jail. The calendar day bond is revoked is not subject to the triple-count provision.[4] Brown was brought to trial on June 10, 2003. During this last period (April 18, 2003 through June 10, 2003), fiftyfour days passed. Since he was in jail during this time, the triple-count statute applies. Applying the triple-count provision, this time counted as one hundred sixty-two days. Thus, Brown should be credited with eighty-seven days for initial jail time, twenty-four days for the time he was out of jail on bond, and one hundred sixty-two days for the time he was reincarcerated, for a total of two hundred seventy-three days.
 {¶ 25} The trial court noted that June 10, 2003 was a Tuesday. The trial court stated that jury trials regularly commence on Tuesdays. Further, the court noted that Brown has not shown he was prejudiced by the delay.
 {¶ 26} The Third Appellate District has held that setting aside regular days for certain types of trials may not be reasonable grounds for extending an accused's speedy-trial period.[5] In the case sub judice, we hold that the trial court's continuance was not reasonable. The trial court did not make a finding that the court's docket prevented the case from being heard the previous week, including the previous Tuesday. The court only noted that the case could not be heard on Saturday, Sunday, or Monday. Without more, we cannot say the trial court provided sufficient rationale for not having the case heard within the parameters of the speedy-trial statute.
 {¶ 27} Two hundred seventy-three days passed prior to Brown being brought to trial. However, there are several tolling events that reduce the speedy-trial computations.
 {¶ 28} R.C. 2945.72 provides, in part:
 {¶ 29} "The time within which an accused must be brought to trial, or, in the case of felony, to preliminary hearing and trial, may be extended only by the following:
 {¶ 30} "* * *
 {¶ 31} "(E) Any period of delay necessitated by reason of a plea in bar or abatement, motion, proceeding, or action made or instituted by the accused."
 {¶ 32} Brown filed a motion for reduction of bond on March 20, 2003. The trial court granted this motion on March 24, 2003. Pursuant to R.C.2945.72(E), a motion for reduction of bond tolls the speedy-trial period.[6] Thus, the four days in which Brown's motion for reduction of bond was pending tolled the speedy-trial clock. Since Brown was in jail during this time and the triple-count provision would have applied, twelve days are subtracted from the two hundred seventy-three day total, resulting in two hundred sixty-one days for speedy-trial purposes.
 {¶ 33} On April 18, 2003, Brown filed a motion for the preparation of the transcript of his March 4, 2003 preliminary hearing at the municipal court level. On April 21, 2003, the trial court granted Brown's motion. Courts have held that a motion for the preparation of a transcript is a tolling event.[7] The three days the trial court used to decide Brown's motion should be tolled. Since Brown was in jail during this time, nine additional days should be subtracted from the above speedy-trial calculations. Therefore, with the tolling periods for the motion to prepare the transcript and for the motion for reduction of bond, the speedy-trial time is two hundred fifty-two days.
 {¶ 34} The state filed a bill of particulars on June 5, 2003. At trial, Brown's trial counsel admitted that he sent a request for discovery to the prosecutor's office on April 17, 2003. The assistant prosecutor indicated that a request for discovery and a request for a bill of particulars were received that day.
 {¶ 35} "A demand for discovery or bill of particulars is a tolling event pursuant to R.C. 2945.72(E)."[8] At trial, defense counsel argued that he was aware of the State v. Brown holding. He intentionally sent the request for discovery to the prosecutor's office, rather than filing a motion in the record. He stated this was an attempt to avoid the Statev. Brown holding and argued that the "request" should not toll the speedy-trial period. On appeal, Brown asserts the same argument.
 {¶ 36} The language in the syllabus of State v. Brown is that a "demand" for a bill of particulars tolls discovery. However, the language of the statute is that any "action made or instituted by the accused" will toll the time.[9] The following language from the Supreme Court of Ohio is helpful, "[d]iscovery requests by a defendant divert the attention of prosecutors from preparing their case for trial, thus necessitating delay. * * * We conclude that allowing a defendant's discovery requests to toll the running of the speedy-trial period is the most sensible interpretation of R.C. 2945.72(E)."[10] The Supreme Court of Ohio specifically refers to "requests" for discovery.[11] We do not see that a distinction should be made between formal, filed requests and informal requests sent to the prosecutor's office.
 {¶ 37} If we were to adopt Brown's position, the effect would be further delay in bringing defendants to trial. Upon receipt of a "request" for discovery or a bill of particulars, the prosecutor would merely stall — forcing the defendant to file a formal motion in the record so the speedy-trial period would be tolled. Such actions are contrary to the goal of the speedy-trial statute.
 {¶ 38} The state filed a bill of particulars on June 5, 2003. The discussions in the record between counsel and the trial court regarding Brown's motion to dismiss suggest that Brown's defense counsel sent both a request for discovery and a request for a bill of particulars to the prosecutor's office on April 17, 2003.
 {¶ 39} Seven weeks passed between the time the request was given to the prosecutor's office and the time the state filed a bill of particulars. Pursuant to State v. Brown, the request tolled the speedy-trial period. However, in this case, we question the reasonableness of the seven-week delay between the request and the filing of the bill of particulars. However, due to the above tolling events, Brown's speedy-trial rights were not violated, regardless of how many days were tolled due to the request for the bill of particulars.
 {¶ 40} Brown's first assignment of error is without merit.
 {¶ 41} Brown's second assignment of error is:
 {¶ 42} "Appellant's conviction of abduction in violation of Revised Code 2905.02 is neither supported by sufficient evidence nor is it supported by the manifest weight of the evidence."
 {¶ 43} A trial court shall grant a motion for acquittal when there is insufficient evidence to sustain a conviction.[12] When determining whether there is sufficient evidence presented to sustain a conviction, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."[13]
 {¶ 44} Brown was charged with abduction, in violation of R.C.2905.02, which provides:
 {¶ 45} "(A) No person, without privilege to do so, shall knowingly do any of the following:
 {¶ 46} "(1) By force or threat, remove another from the place where the other person is found;
 {¶ 47} "(2) By force or threat, restrain the liberty of another person, under circumstances which create a risk of physical harm to the victim, or place other person in fear[.]"
 {¶ 48} In relation to the abduction charge, the indictment reads:
 {¶ 49} "On or about the 22nd day of February, 2003, in the City of Ashtabula, Ashtabula County, Ohio, one RODNEY J. BROWN did, without privilege to do so, knowingly by force or threat, restrain the liberty of Lisa Hamilton, under circumstances which create a risk of physical harm to the said Lisa Hamilton, placing her in fear."
 {¶ 50} In regard to the abduction count, the bill of particulars reads:
 {¶ 51} "The State of Ohio asserts that on or about the 22nd day of February, 2003 while in the City of Ashtabula, County of Ashtabula, and State of Ohio, Defendant RODNEY J. BROWN went to 2118 Eagle Drive, the residence of Lisa Hamilton. Defendant began to assault Hamilton. He forced her into her automobile. Hamilton escaped from the Defendant at the Duke and Duchess Store by going out the back door. Defendant's actions constituted `Abduction', a felony of the 3rd Degree, contrary to and in violation of Ohio Revised Code Title 29, Section 2905.02(A)(2)."
 {¶ 52} Relying on the language of the bill of particulars, Brown argues that the abduction occurred during the car ride to gas station. However, Brown was not charged with abduction under R.C. 2905.02(A)(1), which requires moving another person. He was charged under R.C.2905.02(A)(2), which only requires restraining another's liberty.
 {¶ 53} At trial, Brown's defense counsel argued the bill of particulars was vague. We agree that the bill of particulars could be more precise. However, Brown's trial counsel did not file any motions to clarify the bill of particulars because of his belief that such a motion would trigger a tolling period under State v. Brown.[14] This situation further supports our conclusion that a request for a bill of particulars tolls the speedytrial period. However, since no motion for clarification was made, we will address Brown's assigned error based on the bill of particulars and indictment in the record before us.
 {¶ 54} The state presented evidence, through Hamilton's testimony, that Brown repeatedly beat her for one-and-one-half hours. During this time, Hamilton tried to get away. However, Brown kept beating her, throwing her down, and sitting on top of her. She testified that she was in fear during this attack. She stated she tried to get to the phone, but he prevented her from doing so. She told him she thought she was going to throw up, and he responded that she could throw up on the floor. Finally, she convinced Brown to stop the attack long enough so she could get a glass of water.
 {¶ 55} Moreover, Brown made threats to Hamilton during the attack. He told her he would kill her if she called the police. He also told her he was not afraid of going to jail or the police. These threats and comments further restrained the liberty of Hamilton.
 {¶ 56} The evidence regarding the attack and struggle was sufficient for a reasonable person to find that Brown committed all of the elements of abduction beyond a reasonable doubt.
 {¶ 57} Hamilton testified that she convinced Brown to go to the Duke and Duchess gas station in an attempt to end the abuse. When Hamilton was "stalling" outside her car, Brown screamed at her to "get in the car." On the way to the gas station, Brown made more threats to Hamilton, again telling her he would kill her if she called the police. Finally, she abandoned her vehicle and rode to her sister's residence with two strangers.
 {¶ 58} An abduction or kidnapping lasts until there is a "moment of freedom."[15] In this case, the state presented evidence that Hamilton was not free until she obtained the ride to her sister's house. Prior to that, she was continuously under the control of Brown. She sustained a non-stop beating for one-and-one-half hours. Thereafter, when riding in the car with Brown, she was in continued fear due to Brown's extreme threats.
 {¶ 59} Even if we were to accept Brown's argument that Hamilton went to the store of her own free will, there was still sufficient evidence that her liberty was restrained during the attack in the house. Thus, the "moment of freedom" would have been entering the car. However, by that time, the crime of abduction had already been completed.
 {¶ 60} Brown also contends his abduction conviction is against the manifest weight of the evidence. In determining whether a verdict is against the manifest weight of the evidence, the Supreme Court of Ohio has adopted the following language as a guide:
 {¶ 61} "`The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'"[16]
 {¶ 62} The weight to be given to the evidence and the credibility of the witnesses are primarily matters for the jury to decide.[17]
 {¶ 63} Hamilton's testimony indicated that Brown restrained her in her trailer. In addition, his physical attacks and threats placed her in fear. Hamilton testified that the restraint continued during the car ride to the gas station. There was no evidence presented to rebut Hamilton's testimony. By returning a guilty verdict, it is evident that the jury believed Hamilton's testimony. As such, we cannot say the jury lost its way or created a manifest miscarriage of justice.
 {¶ 64} Brown's second assignment of error is without merit.
 {¶ 65} Brown's third assignment of error is:
 {¶ 66} "Appellant's conviction for assault in violation of Revised Code 2903.13 is neither supported by sufficient evidence nor is it supported by the manifest weight of the evidence."
 {¶ 67} Brown was charged with assault, in violation of R.C. 2903.13, which provides:
 {¶ 68} "(A) No person shall knowingly cause or attempt to cause physical harm to another or to another's unborn."
 {¶ 69} Hamilton testified that Brown repeatedly hit her. She stated he banged her head into a wall, threw her onto furniture, and punched her in the head. Such actions certainly met the definition of assault, i.e., knowingly causing or attempting to cause physical harm to another person.
 {¶ 70} Brown argues that there were no photographs of Hamilton's injuries introduced at trial. Also, he argues that the fact that Hamilton did not go to the hospital lessens the credibility of her story. However, her testimony, standing alone, is sufficient for a jury to find that Brown committed assault beyond a reasonable doubt. Thus, the state presented sufficient evidence, and the trial court did not err by denying Brown's motion for acquittal on this charge.
 {¶ 71} In addition, we cannot say the assault conviction is against the manifest weight of the evidence. The jury heard detailed testimony from Hamilton regarding the attack from Brown. Apparently, the jury believed this testimony. Brown did not testify, so there was no competing testimony presented. Likewise, Brown did not present an alibi defense. Accordingly, we cannot say the jury lost its way or created a miscarriage of justice by finding Brown guilty of assault.
 {¶ 72} Brown's third assignment of error is without merit.
 {¶ 73} Brown's fourth assignment of error is:
 {¶ 74} "Appellant's constitutional rights against self incrimination were violated when Ashtabula County Prosecutor David Foster told a jury that his case was uncontroverted."
 {¶ 75} We note that counsel is to be given latitude during summation.[18] In addition, prosecutorial misconduct will not be grounds for error unless the defendant is denied a fair trial.[19]
 {¶ 76} The state is permitted to comment about a defendant's failure to offer evidence.[20] However, the state may not mention the defendant's decision not to testify.[21]
 {¶ 77} In the case sub judice, the assistant prosecutor stated the evidence was "uncontroverted." The Third Appellate District has applied the State v. Collins holding to the term "uncontroverted."[22] InHorch, the state referred to the evidence as "uncontroverted" on several occasions.[23] The court held that the comments were acceptable as they mostly referred to the weight to be given to the evidence, not the defendant's failure to testify.[24]
 {¶ 78} In the case at bar, there was a single comment regarding "uncontroverted" testimony. As was the case in State v. Horch, this comment primarily referred to the weight of the evidence, rather than Brown's decision not to testify. Moreover, to the extent the comment might have suggested Brown's failure to testify, Brown was not denied a fair trial by it. The trial court instructed the jury that Brown had a constitutional right not to testify and not to consider the fact he did not testify for any purpose.
 {¶ 79} In his supplemental brief, Brown argues the following comment made by the state was improper. "Well, but look beyond the facts."
 {¶ 80} Brown did not object to this comment at trial, thus, he has waived all but plain error.[25] Plain error exists only where the results of the trial would have been different without the error.[26]
 {¶ 81} Generally, asking the jury to consider facts not in evidence would exceed the latitude given to summation. However, this comment was followed by an alternative theory of the prosecutor. The state argued, why else would Hamilton abandon her vehicle if the events she described were untrue? Essentially, the state was commenting on the lack of testimony from Hamilton regarding this alternative theory, by focusing the jury's attention to his argument that the events described by Hamilton justified finding Brown guilty of the offenses. The state was asking the jury to apply common sense to the evidence presented at trial.
 {¶ 82} Applying the plain error standard, we cannot say the results of the trial would have been different without this comment. The trial court instructed the jury that the evidence they were to consider was the testimony of the witnesses. Further, the court properly instructed the jury that closing arguments were not to be considered as evidence.
 {¶ 83} Brown's fourth assignment of error is without merit.
 {¶ 84} In addition to Brown's assigned errors, it is necessary to address the implications of Blakely v. Washington on this matter.[27]
Brown received a four-year prison term. The minimum prison term for a third-degree felony is one year.[28] R.C. 2929.14(B) requires the judge to make certain findings prior to imposing a prison term greater than the minimum.
 {¶ 85} In 2004, the United States Supreme Court issued its judgment inBlakely v. Washington and made it clear that judges making "findings" outside a jury's determinations in sentencing violated constitutional guarantees.[29] Specifically, the court held:
 {¶ 86} "Our precedents make clear, however, that the `statutory maximum' for Apprendi purposes is the maximum sentence a judge may imposesolely on the basis of the facts reflected in the jury verdict oradmitted by the defendant. * * * In other words, the relevant `statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts `which the law makes essential to the punishment,' * * * and the judge exceeds his proper authority."[30]
 {¶ 87} Following the United States Supreme Court's decision inBlakely, this court determined that a trial court's reliance on a defendant's previous conviction as evidenced in the record would still be permissible for the purpose of imposing a sentence greater than the minimum.[31] As stated by this court in State v. Taylor:
 {¶ 88} "Under R.C. 2929.14(B)(1), the court is entitled to depart from the shortest authorized prison term if the `offender previously had served a prison term.' Under Apprendi, the fact of a prior conviction may be used to enhance the penalty for a crime without being submitted to a jury and proven beyond a reasonable doubt.[32] According to Taylor's presentence investigation report, Taylor had served at least one prior prison term[.] * * * Therefore, the trial court's imposition of prison terms of three years * * *, 17 months * * * and 11 months * * * are all constitutionally permissible under Apprendi and, by extension,Blakely."[33]
 {¶ 89} It is clear that, for Blakely purposes, a trial court is permitted to take judicial notice that a defendant has served a prior prison term, for that is not a "finding." It is a judicial acknowledgement of an indisputable fact. The trial court merely acknowledges the prior prison term and does not have to weigh conflicting evidence to make a factual finding. As such, a defendant's Sixth Amendment rights are not compromised by the exercise.
 {¶ 90} The transcript of the sentencing hearing indicates Brown served a prior prison term. Since Brown served a prior prison term, the trial court was justified in imposing more than the minimum sentence.
 {¶ 91} The judgment of the trial court is affirmed.
Grendell, J., Rice, J., concur.
[1] Abduction is codified in R.C. 2905.02 and is a third-degree felony. Assault is codified in R.C. 2903.13 and is a first-degree misdemeanor.
[2] State v. Lautenslager (1996), 112 Ohio App.3d 108, 110.
[3] See, e.g., State v. Jones (1997), 119 Ohio App.3d 59, 64.
[4] See, e.g. State v. Peterson (Nov. 29, 1996), 11th Dist. No. 96-T-5456, 1996 Ohio App. LEXIS 5416, at *6.
[5] State v. Daugherty (1996), 110 Ohio App.3d 103, 106.
[6] State v. Caudill (Dec. 2, 1998), 3d Dist. No. 5-97-35, 1998 Ohio App. LEXIS 6018, at *8, citing State v. Walters (Jan. 18, 1996), 8th Dist. No. 68279, 1996 Ohio App. LEXIS 117; See, also, State v. Russell
(Mar. 20, 1996), 9th Dist. No. 17407, 1996 Ohio App. LEXIS 1084, at *4.
[7] State v. Sanders (May 24, 1989), 1st Dist. Nos. C-870596, C-870598, and C-870639, 1989 WL 54219, at *3. See, also, State v.Jefferson (Mar. 14, 1997), 2d Dist. No. 15828, 1997 Ohio App. LEXIS 887, at *30; State v. Haddox (Dec. 30, 1986), 7th Dist. No. 84-C-25, 1986 Ohio App. LEXIS 9535, at *2-3.
[8] State v. Brown, 98 Ohio St.3d 121, 2002-Ohio-7040, syllabus.
[9] R.C. 2945.72(E).
[10] State v. Brown, 98 Ohio St.3d at 124.
[11]. Id.
[12] Crim.R. 29(A).
[13] State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, following Jackson v. Virginia (1979), 443 U.S. 307.
[14] State v. Brown, supra.
[15] State v. Haines, 11th Dist. No. 2003-L-035, 2005-Ohio-1692, at ¶ 46.
[16] (Citations omitted.) State v. Thompkins (1997), 78 Ohio St.3d 380,387.
[17] State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
[18] State v. Woodards (1966), 6 Ohio St.2d 14, 26.
[19] State v. Maurer (1984), 15 Ohio St.3d 239, 266.
[20] (Citations omitted.) State v. Collins (2000), 89 Ohio St.3d 524,527.
[21] Id. at 528, citing State v. Thompson (1987), 33 Ohio St.3d 1, 4.
[22] State v. Horch, 3d Dist. No. 14-03-27, 2004-Ohio-1509.
[23] Id. at ¶ 5.
[24] Id. at ¶ 6.
[25]. State v. Green (2000), 90 Ohio St.3d 352, 373, citing State v.Wade (1978), 53 Ohio St.2d 182, paragraph one of the syllabus.
[26] State v. Issa (2001), 93 Ohio St.3d 49, 56, citing State v.Moreland (1990), 50 Ohio St.3d 58, 62.
[27] Blakely v. Washington (2004), 124 S.Ct. 2531.
[28] R.C. 2929.14(A)(3).
[29] Blakely v. Washington, supra.
[30] (Emphasis in original and internal citations omitted.) Id. at 2537.
[31] State v. Taylor, 158 Ohio App.3d 597, 2004-Ohio-5939.
[32] Apprendi v. New Jersey (2000), 530 U.S. 466, 490, citing Jones v.United States (1999), 526 U.S. 227, 243, fn. 6.
[33] State v. Taylor, at ¶ 25.