[Cite as *State v. Mills*, 2011-Ohio-3837.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
No.   95837

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## FURNELL MILLS

DEFENDANT-APPELLANT

---

## JUDGMENT:
## AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-536865

**BEFORE:**   Boyle, P.J., S. Gallagher, J., and Keough, J.

**RELEASED AND JOURNALIZED:**   August 4, 2011

**ATTORNEY FOR APPELLANT**

Steve W. Canfil
1370 Ontario Street
Standard Building
Suite 2000
Cleveland, Ohio   44113


**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor
BY:   John Hanley
Assistant County Prosecutor
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113




MARY J. BOYLE, P.J.:

{¶ 1}   Defendant-appellant, Furnell Mills, appeals his convictions for aggravated robbery, felonious assault, and carrying a concealed weapon.   He raises the following two assignments of error:

{¶ 2}   "I.   The identification procedure was the result of illegally obtained evidence, was unreliable, unduly prejudicial and violated appellant's rights under the due process clause and the Fourth and Fifth Amendments of the United States Constitution.

{¶ 3} "II.  The jury's verdicts are against the manifest weight of the evidence."

{¶ 4}  We find Mills's arguments unpersuasive and affirm.

Procedural History and Facts

{¶ 5}  Mills, who was a juvenile at the time the underlying offenses were committed, was bound over to Cuyahoga County Common Pleas Court to be tried as an adult.  He was then indicted on eight counts, which included the following: (1) attempted murder, in violation of R.C. 2923.02 and 2903.02(A); (2) two counts of kidnapping, in violation of R.C. 2905.01(A)(2) and (A)(3); (3) two counts of felonious assault, in violation of R.C. 2903.11(A)(1) and (A)(2); (4) two counts of aggravated robbery, in violation of R.C. 2911.01(A)(1) and (A)(3); and (5) carrying a concealed weapon, in violation of R.C. 2923.12(A)(2).  The first seven counts all carried one- and three-year firearm specifications. Mills pleaded not guilty to the charges, and the matter proceeded to a jury trial.

{¶ 6}  The evidence at trial revealed that on December 31, 2009, at approximately 1:30 p.m., Brian Boyd ("the victim") was leaving his friend's house on Yale Avenue when two males robbed him at gunpoint.  According to Boyd, one of the males was carrying a small silver gun and the other one was carrying a black, long, ".38 old police gun with a long nose."  Boyd was ordered to lie on his stomach on the ground.  The males then searched his pockets and took his money.  And then, inexplicably, one of the males shot him in the back, and they both fled the scene.

{¶ 7} Boyd was taken to the hospital and remained under hospital care until March 25, 2010. While in the hospital, Cleveland detective Michael Legg questioned Boyd regarding the shooting and robbery. Det. Legg also presented Boyd with a photo array containing six photos. Boyd positively identified Mills from the photos as one of the perpetrators. He additionally identified Mills at trial as one of the two perpetrators.

{¶ 8} Det. Legg testified that he interviewed several people in connection with the robbery and shooting, including the owner of the residence where Boyd was visiting and the next door neighbor, Anthony Acton. According to Acton, Mills was at his house on the day of the incident, hanging out with Acton's little brother, Aaron Jackson. Acton explained that he knew Mills through Mills's cousin, Cameron Davis. Acton further testified that he heard the gunshots but did not see the shooting. After the shooting, Acton, who was driving with Davis, observed Mills walking down East Boulevard, going toward St. Clair Avenue. Acton testified that they stopped for Mills to get a ride and that once inside the vehicle, Mills told his cousin, Davis, that he "hit a lick," which meant that he committed a robbery, and that Mills further confessed to shooting the victim outside of Acton's house. Acton further testified that he did not see Mills with a gun in the car but that the previous week he saw Mills with a "short-barreled .38 revolver and a long-barreled .38 revolver."

{¶ 9} Det. Legg also testified that he obtained surveillance video from December 31, 2009 of Norman's Deli, a store near the scene of the crime, where the perpetrators were

reported to have been seen on the day of the incident. Det. Legg identified Mills in the video as well as Acton's brother, Aaron Jackson.

{¶ 10} In his statement to the police, Mills admitted that he was at Aaron's house and Norman's Deli earlier in the day on December 31, 2009, but that he left with his friend Dajon Williams. He further stated that later in the day he and Dajon were at the corner of East 99th Street and East Boulevard when they spotted Acton and Davis at a stop sign. They proceeded to flag them down and asked them for a ride. According to Mills, Davis told him that he and Aaron "hit a lick on the dro," meaning that they robbed the victim for marijuana, and that he saw Davis hide the gun under a mattress. Mills also stated that, earlier in the day, Aaron had bought a .38 gun, which Mills admitted that he had touched at some point. According to Mills, Aaron purchased the gun 15 minutes before they all went to Norman's Deli, prior to the incident.

{¶ 11} In addition to Mills's statement, the state offered testimony establishing that the police recovered three pieces of bullet fragments on the scene; they did not find any shell casings. Det. Legg explained that shell casings are extracted from a semiautomatic or automatic weapon when fired but that a revolver would only extract the bullet that exited the firearm. The state further presented the testimony of Aldeandre Wilson, the victim's friend residing at Yale Avenue, who testified that Mills attempted to sell him an iPod the day

before the incident and asked him if he had any bullets for a .38 revolver, which Wilson observed Mills carrying.

{¶ 12} The jury ultimately found Mills not guilty of the attempted murder and one count of kidnapping but guilty of the six remaining counts. The trial court subsequently sentenced Mills to a total term of 19 years in prison and informed him that he was subject to a mandatory period of five years of postrelease control upon his release.

Identification Procedure

{¶ 13} In his first assignment of error, Mills argues that the trial court erred in denying his motion to suppress the victim's pretrial identification of him through a photo array. We disagree.

{¶ 14} A motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶8. Consequently, we give deference to the trial judge's factual findings, but we review the application of law to fact de novo. Id.; see, also, *State v. Davis*, 8th Dist. No. 83033, 2004-Ohio-1908.

{¶ 15} In *Neil v. Biggers* (1972), 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401, the United States Supreme Court held that an identification derived from unnecessarily suggestive procedures, which have a likelihood of leading to a misidentification, violates a defendant's right to due process.

{¶ 16} In determining the admissibility of challenged identification testimony, a reviewing court applies a two-prong test: (1) did the defendant demonstrate that the identification procedure was unduly suggestive; and, if so, (2) whether the identification, viewed under the totality of the circumstances, is reliable despite its suggestive character. *State v. Harris*, 2d Dist. No. 19796, 2004-Ohio-3570, ¶19; see, also, *State v. Thompson*, 8th Dist. No. 90606, 2009-Ohio-615, ¶ 32, citing *State v. Page*, 8th Dist. No. 84341, 2005-Ohio-1493. "Stated differently, the issue is whether the identification, viewed under the totality of the circumstances, is reliable despite the suggestive procedure." *State v. Wills* (1997), 120 Ohio App.3d 320, 324-325, 696 N.E.2d 1072.

{¶ 17} If the defendant meets the first prong, then the second part of the inquiry focuses upon five factors necessary to assess the reliability of the identification, despite the taint of the show-up. These five factors are (1) the witness's opportunity to view the defendant at the time of the crime, (2) the witness's degree of attention at the time of the crime, (3) the accuracy of the witness's description of the defendant prior to the identification, (4) the witness's level of certainty when identifying the defendant at the confrontation, and (5) the length of time that has elapsed between the crime and the confrontation. *Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401; see, also, *State v. Williams*, 172 Ohio App.3d 646, 2007-Ohio-3266, 876 N.E.2d 991.

{¶ 18} Mills first argues that the trial court should have granted his motion to suppress because the victim's identification stemmed from an illegally obtained photograph of him. He contends that "it is undisputed" that the police arrested him on January 5, 2010 "without warrant or probable cause" and that through this unlawful arrest, the police obtained a photograph of him that was subsequently used in the photo array presented to the victim. We find this argument misplaced. While the record reveals that Mills was first arrested and booked on January 5, 2010 and then later released, there is no evidence in the record to support his claim that the police lacked probable cause to arrest him. Mills mistakenly equates the prosecutor's decision not to pursue charges at that time as undisputable evidence that the arrest was unlawful. This is simply not the case.

{¶ 19} We likewise find no merit to Mills's claim that the police violated R.C. 2151.313(A)(1) by photographing Mills in connection with his arrest without first obtaining the consent of the juvenile judge. The statute further provides that the consent of the juvenile judge is not necessary under either of the following circumstances:

{¶ 20} "(a) The child has been arrested or otherwise taken into custody for committing, or has been adjudicated a delinquent child for committing, an act that would be a felony if committed by an adult or has been convicted of or pleaded guilty to committing a felony.

{¶ 21} "(b) There is probable cause to believe that the child may have committed an act that would be a felony if committed by an adult." R.C. 2151.313(A)(3)(a) and (b).

Therefore, because the Cleveland police arrested Mills based on probable cause that he had committed several felonies, the police were not required to obtain the consent of a juvenile judge prior to booking him.

**{¶ 22}** Mills next argues that his motion to suppress should have been granted because (1) the identification procedure was unduly suggestive, and (2) the identification was not reliable based on the totality of the circumstances. He argues that the facts of his case are "virtually identical" to the facts in *State v. Farrow*, 8th Dist. No. 94435, 2010-Ohio-5843, where this court found that the identification procedures were unduly suggestive and unreliable. Id. at ¶28. We find, however, that *Farrow* is distinguishable.

**{¶ 23}** In *Farrow*, we explained: "'This court has previously held that telling a victim that the suspect's photo is in the array may render the identification procedure unduly suggestive. See *State v. Jones*, 8th Dist. No. 85025, 2005-Ohio-2620. As we recognized in *Jones*, such a statement pressures a victim to choose someone, regardless of certainty, because the victim was told that the suspect was in the array. Id. at ¶17.'" *Farrow* at ¶15, quoting *State v. Johnstone*, 8th Dist. No. 92855, 2010-Ohio-1854, ¶25. In *Farrow*, we found that the "identification procedure was impermissibly suggestive" because the detective's testimony demonstrated "that he told the victim that the suspect's photo was in the array." Id. at ¶16.

**{¶ 24}** Here, however, the record reveals that Det. Legg expressly testified that he did not tell the victim that the suspect was part of the photo array prior to showing him the photo

array in the hospital. Further, when defense counsel asked Mills, "And [the detective] told you, the suspect is in this photograph, pick him out, right," Mills replied, "Well, he just said, you know, here go a lineup, do you see the suspect in this lineup." Accordingly, we find that Mills failed to satisfy his burden under the first prong that the identification procedure was unduly suggestive.

{¶ 25} Having found that Mills failed to satisfy his initial burden of demonstrating that the identification procedure was unduly suggestive, we need not address his subsequent claim that the identification was unreliable.

{¶ 26} The first assignment of error is overruled.

<u>Manifest Weight of the Evidence</u>

{¶ 27} In his second assignment of error, Mills argues that his conviction is against the manifest weight of the evidence. We disagree.

{¶ 28} In reviewing a claim challenging the manifest weight of the evidence, "[t]he question to be answered is whether there is substantial evidence upon which a jury could reasonably conclude that all the elements have been proved beyond a reasonable doubt. In conducting this review, we must examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must

be reversed and a new trial ordered." (Internal quotes and citations omitted.) *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶81.

{¶ 29} The gravamen of Mills's argument is that the victim's testimony and identification was totally unreliable. He points to a number of inconsistencies in the victim's testimony regarding the incident and further argues that the victim's description of the perpetrators following the incident was totally lacking and therefore unreliable. But when assessing witness credibility, "[t]he choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact." *State v. Awan* (1986), 22 Ohio St.3d 120, 123, 489 N.E.2d 277. "Indeed, the factfinder is free to believe all, part, or none of the testimony of each witness appearing before it." *Warren v. Simpson* (Mar. 17, 2000), 11th Dist. No. 98-T-0183.

{¶ 30} Based on the record before us, we conclude that this case is not the "exceptional case in which the evidence weighs heavily against the conviction," such that Mills's conviction should be reversed and he should receive a new trial. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541. Indeed, aside from the victim's positive identification of Mills, the state established Mills's presence near the scene both before and after the incident, that Mills was known to carry a .38 caliber revolver — the same type of gun identified as being carried by one of the perpetrators, that Mills had requested

bullets for the .38 revolver prior to the incident, and that Mills had confessed in Acton's presence that he committed the robbery and shooting. And while Mills argues that Acton's testimony was not credible, this again was a matter for the jury to resolve, and the jury obviously found Acton's testimony more credible than Mills's statement that Davis and Acton's brother committed the crimes.

{¶ 31} Accordingly, the second assignment of error is overruled.

Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY J. BOYLE, PRESIDING JUDGE

SEAN C. GALLAGHER, J., and
KATHLEEN ANN KEOUGH, J., CONCUR