[Cite as *State v. Majid*, 2012-Ohio-1192.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
## No.   96855

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## ARIF MAJID

DEFENDANT-APPELLANT

## JUDGMENT:
## AFFIRMED IN PART, REVERSED IN PART
## AND REMANDED FOR RESENTENCING

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-474447

**BEFORE:**   E. Gallagher, J., Rocco, P.J., and Kilbane, J.

**RELEASED AND JOURNALIZED:**   March 22, 2012

**FOR APPELLANT**

Arif Majid, pro se
Inmate No. A492-322
Mansfield Correctional Institution
P.O. Box 788
Mansfield, Ohio   44901

**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor

BY:    Kristen L. Sobieski
Assistant County Prosecutor
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio   44113

EILEEN A. GALLAGHER, J.:

{¶1} Defendant-appellant Arif Majid ("appellant"), a.k.a. Cedric Parker, appeals convictions entered in the Cuyahoga County Court of Common Pleas on May 3, 2011. Appellant sets forth 13 assignments of error arguing that the trial court erred in (1) permitting the jury to find the appellant guilty of murder based on insufficient evidence; (2) by overruling appellant's motion to suppress the identification procedure; (3) by "conceding" prosecutorial misconduct; (4) by admitting and allowing prejudicial evidence; (5) by providing a transferred intent jury instruction; (6) by allowing convictions for causing an injury rather than death, instructing the jury on causation and refusing to instruct on lesser included offenses; (7) in subjecting appellant to unconstitutional multiple punishments; (8) in allowing a conviction for attempted murder without the testimony of the victim; (9) by overruling appellant's motion for judgment of acquittal and (10) by informing the jury that appellant could be convicted of accidental death or injury. For the following reasons, we affirm but remand for resentencing.

{¶2} On December 6, 2005, appellant was charged in a five count indictment stemming from a shooting incident that occurred in the early morning hours of September 4, 2005 at Milton's Lounge in Euclid, Ohio. Specifically, appellant was charged with aggravated murder in violation of R.C. 2903.01 with one- and three-year firearm specifications, three mass murder specifications, a notice of prior conviction and a repeat violent offender specification. Appellant was also charged with having a weapon while

under disability, three counts of attempted murder with one- and three-year firearm specifications, a notice of prior conviction and a repeat violent offender specification. Appellant pled not guilty to the charges.

{¶3} The case proceeded to a jury trial[1] and under Count 1 appellant was found guilty of murder in violation of R.C. 2903.02(A) with specifications for firearms and mass murder, the notice of prior conviction and the repeat violent offender specification. The jury also found appellant guilty of attempted murder in Counts 2 and 4 along with one- and three-year firearm specifications, the notice of prior conviction and the repeat violent offender specifications. The jury found appellant not guilty of attempted murder in Count 3. The court found appellant to be guilty of having a weapon while under disability. On August 30, 2007, appellant was sentenced to a cumulative prison term of 43 years to life.

{¶4} This court reversed appellant's convictions and remanded the case for a retrial due to jury misconduct in *State v. Majid*, 182 Ohio App.3d 730, 2009-Ohio-3075, 914 N.E.2d 1113, at ¶ 33 (8th Dist.) ("Majid I").

{¶5} A second trial commenced April 25, 2011. Prior to trial, the trial court again renumbered the counts of the indictment and the state of Ohio dismissed several specifications. Appellant waived his right to a trial by jury as to Count 4 only.

---

[1]Appellant waived his right to a trial by jury on the charge of having a weapon while under disability (Count 2) and the court renumbered the charges set forth in the indictment.

{¶6}   In this second trial the charges presented were Count 1 —  murder with one- and three-year firearm specifications; Count 2 — attempted murder with one- and three-year firearm specifications; Count 3 — attempted murder with one- and three-year firearm specifications; and Count 4 — having a weapon while under disability.

{¶7}   It was the state's evidence at trial that on the night of September 3, 2005 and the early morning hours of September 4, 2005, appellant went to Milton's Lounge in Euclid, Ohio.  The bar had a crowd of approximately fifty people at the time, slightly under maximum capacity.  Appellant, described as a light skinned African American male, was accompanied by his brother, Lecarlton Parker, who was described as a dark skinned African American male and two of Lecarlton's friends, Christopher Core and Clifton Harris.   Witnesses inside the bar described appellant and his group as "rowdy."  While on the bar's dance floor, appellant twice removed his shirt and was asked by bar employees to re-dress.  A number  of witnesses reported taking notice of distinctive tattoos on appellant's bare torso, including a prominent "jihad" tattoo across his back and shoulders.  Appellant's group was eventually asked to leave by bar management after an unknown member of the group dropped a drink on the dance floor.  While witness accounts at trial were conflicting as to whether appellant's group left the bar on their own accord, which bar employees escorted the group out, whether the group left with or without making a disturbance and whether threats were made as the group was leaving, all witnesses agreed that the group did exit the bar.

{¶8} Appellant and Lecarlton remained on the sidewalk outside the bar, visible through the bar's front picture window. Milton Franklin, Jr., the bar's owner, asked the men not to loiter outside the bar but his request was ignored. Milton Franklin III, the son of Milton Franklin, Jr., and an employee of the bar, joined the confrontation just outside the bar's door and angry words were exchanged between Milton Franklin III and the men. Christopher Core testified that he and Clinton Harris had walked back to their car while appellant and Lecarlton remained. Core testified that he heard Lecarlton exchange angry words with another man. Milton Jr. brought Milton III back inside the bar and began to close and lock the front door when someone outside of the bar punched the small square window in the bar's door, causing it to crack. A witness in the parking lot indicated that a darker skinned man punched the door's window and D.N.A. evidence was introduced that Lecarlton had left traces of blood on the small window.

{¶9} Milton III responded by pulling a gun and, from the bar's doorway, firing what he described as warning shots in the direction of appellant and Lecarlton. Christopher Core testified that after he heard gunshots he heard appellant shout, "somebody tried to shoot my brother" and appellant and Lecarlton retreated into the parking lot while Milton III went into the bar and Milton Jr. locked the door.

{¶10} Appellant and his brother were seen running back to the bar and shortly thereafter the small window in the bar door was fully knocked out and a light skinned arm was extended through the window holding a gun and at least two shots were then fired into

the bar. The bar's bouncer, Wesley Williams, struggled with the gun arm until it was retracted through the door. Paulette Shelton testified that she was able to see through the window of the door and she identified appellant as the shooter to whom the gun arm belonged.

{¶11} Witnesses testified that after the arm holding a gun was extracted from the window they saw appellant, outside the bar's front picture window point his gun at the bar and begin firing. Witnesses recognized appellant's face due to the attention he drew to himself earlier on the dance floor. Milton III testified that at the time of the shooting through the picture window, he was standing in front of the window inside of the bar when appellant saw him through the window and began shooting in his direction.

{¶12} Three bar patrons were struck by bullets as a result of the shooting. Jerome Thomas was shot twice and died as a result of his wounds. Rayshawn Whitsett was shot in the hip and Marcus Barnes was shot in both legs.

{¶13} On May 3, 2011, the jury returned a verdict of guilty as to murder with one- and three-year firearm specifications (Count 1); attempted murder with one- and three-year firearm specifications (Count 2) and attempted murder with one- and three-year firearm specifications (Count 3).

{¶14} On May 4, 2011, the court rendered a guilty verdict as to Count 4 — having weapons while under disability.

{¶15} The appellant was sentenced to a cumulative prison term of 43 years to life as follows:

> Defendant sentenced to 18 years to life on Count 1; (3 years on the gun specification to run prior to and consecutive to 15 years to life on Count 1); All gun specifications merge for sentencing purposes.   10 years on each of Counts 2 and 3; 5 years on Count 4; All counts to run consecutive for a total of 43 years to life.

{¶16} Appellant's first, tenth and eleventh assignments of error challenge the legal sufficiency of the evidence to support his convictions for murder and attempted murder and the trial court's denial of his Crim.R. 29(A) motion.   We, therefore, address these errors together.

{¶17} Pursuant to Crim.R. 29(A), a court "shall order the entry of a judgment of acquittal of one or more offenses * * * if the evidence is insufficient to sustain a conviction of such offense or offenses."

{¶18} An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, (superseded by statute and constitutional amendment on other grounds).   A reviewing

court is not to assess "whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *State v. Thompkins*, 78 Ohio St.3d 380, 390, 1997-Ohio-52, 678 N.E.2d 541 (Cook, J., concurring).

{¶19} The elements of murder and attempted murder are set forth in statute. R.C. 2903.02(A) provides: "[n]o person shall purposely cause the death of another * * * " and R.C. 2923.02(A), the "attempt" statute provides that "no person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense."

{¶20} Pursuant to R.C. 2901.22(A),

> a person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature.

{¶21} In the case sub judice, the state presented sufficient evidence at trial to support appellant's convictions for murder and attempted murder. Four separate witnesses, Rayshawn Whitsett, Michelle Johnson, Nickeesha Robinson and Milton Franklin III, testified to seeing appellant fire the gunshots that came into the bar through the picture window. Paulette Shelton testified to seeing appellant fire the shots that came through the window in the bar's door. Each of the witnesses recognized appellant's face due to the attention he drew to himself from his rowdy behavior earlier in the evening on the bar's dance floor, including removing his shirt and displaying distinctive tattoos.

{¶22} In his first and eleventh assignments of error appellant argues that the state failed to introduce evidence that he acted purposely in causing the death of Jerome Thomas or attempting to cause the deaths of Rayshawn Whitsett and/or Marcus Barnes.

{¶23} Whether a defendant had the specific intent to kill must be determined by the facts and circumstances surrounding the crime, "including the instrument used, its tendency to destroy life if designed for that purpose, and the manner of inflicting the wound." *State v. Pound*, 2d Dist. No. 16834, 1998 WL 636996, \*3, citing *State v. Robinson*, 161 Ohio St. 213, 218-219, 118 N.E.2d 517 (1954). The specific intent to kill may be reasonably inferred from the fact that a firearm is an inherently dangerous instrument, the use of which is likely to produce death, coupled with relevant circumstantial evidence. *State v. Searles*, 8th Dist. No. 96549, 2011-Ohio-6275, at ¶ 11, citing *State v. Widner*, 69 Ohio St.2d 267, 431 N.E.2d 1025 (1982). "[P]ersons are presumed to have intended the natural, reasonable and probable consequences of their voluntary acts." *State v. Garner*, 74 Ohio St.3d 49, 60, 656 N.E.2d 623 (1995). "The act of pointing a firearm and firing it in the direction of another human being is an act with death as a natural and probable consequence." *State v. Brown*, 8th Dist. No. 68761, 1996 WL 86627, \*6 (Feb. 29, 1996).

{¶24} As an initial matter, we note that the evidence at trial was that appellant fired into a crowded bar that was operating at slightly under its maximum capacity. Courts have previously held that evidence that a defendant shot a gun into a crowd of people was

sufficient to establish the purposefulness element of R.C. 2903.02(A). *State v. Williamson*, 8th Dist. No. 95732, 2011-Ohio-4095, at ¶ 19, citing *State v. Carter*, 115 Ohio App.3d 770, 686 N.E.2d 329 (7th Dist. 1996); *State v. Smith*, 89 Ohio App.3d 497, 624 N.E.2d 1114 (10th Dist. 1993); *State v. Cottrell*, 8th Dist. No. 81356, 2003-Ohio-5806.

**{¶25}** The state introduced evidence, however, that appellant fired specifically at Milton Franklin III, who was positioned at the time of the shooting inside the bar and in front of the bar's picture window. "[U]nder the doctrine of transferred intent, an offender who intentionally acts to harm someone but ends up accidentally harming another is criminally liable as if the offender had intended to harm the actual victim." *In re T.K.*, 109 Ohio St.3d 512, 514, 2006-Ohio-3056, 849 N.E.2d 286, at ¶ 15. We have previously applied the doctrine of transferred intent to "bad aim" cases such as the present case to find sufficient evidence of purposeful conduct to support both murder and attempted murder convictions. *State v. Wheeler*, 8th Dist. No. 66923, 1995 WL 322247, *4 (May 25, 1995).

**{¶26}** The state's evidence was that appellant fired six shots through the bar's front picture window intending to kill Milton Franklin III, and due to his poor aim, Jerome Thomas, Rayshawn Whitsett and Marcus Barnes were shot instead. We find that the state introduced sufficient evidence of appellant's purposeful conduct to support his convictions for murder and attempted murder.

**{¶27}** In his tenth assignment of error appellant challenges the sufficiency of his attempted murder conviction of Marcus Barnes and argues that his constitutional right to

confrontation was denied because Barnes did not testify at trial. At trial, the state sought to introduce prior testimony of Marcus Barnes regarding this incident due to Barnes's unavailability. As an initial matter, it is unclear whether Barnes previously testified in a civil case regarding this shooting incident or at appellant's prior criminal trial. Appellant's argument is without merit because the trial court *denied* the introduction of Barnes's prior testimony, whatever the source. The testimony of Rayshawn Whitsett, Euclid Detective Robert Pestak and medical records from Hillcrest Hospital established that Barnes received gunshot wounds to both his legs as a result of this shooting.

{¶28} Appellant's first, tenth and eleventh assignments of error are without merit and overruled.

{¶29} Appellant argues in his second assignment of error that the out-of-court identification procedure used to identify him was suggestive and conducive to misidentification, because the procedure included showing witnesses' photographs of the appellant's naked torso covered with distinctive tattoos.

{¶30} This court set forth the scope of our review regarding a motion to suppress in *State v. Curry*, 95 Ohio App.3d 93, 96, 641 N.E.2d 1172 (8th Dist. 1994):

> In a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate witness credibility. A reviewing court is bound to accept those findings of fact if supported by competent, credible evidence. However, without deference to the trial court's conclusion, it must be determined independently whether, as a matter of law, the facts meet the appropriate legal standard. (Internal citations omitted.)

**{¶31}** In *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71,

¶ 8, the Ohio Supreme Court found that:

> [A]ppellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard. (Internal citations omitted.)

> In determining the admissibility of challenged identification testimony, a reviewing court applies a two-prong test: (1) did the defendant demonstrate that the identification procedure was unduly suggestive; and, if so, (2) whether the identification, viewed under the totality of the circumstances, is reliable despite its suggestive character. *State v. Mills*, 8th Dist. No. 95837, 2011-Ohio-3837, ¶ 16, citing *State v. Harris*, 2d Dist. No. 19796, 2004-Ohio-3570, ¶ 19. "Stated differently, the issue is whether the identification, viewed under the totality of the circumstances, is reliable despite the suggestive procedure." *State v. Wills*, 120 Ohio App.3d 320, 324-325, 696 N.E.2d 1072 (8th Dist.1997).

**{¶32}** Appellant filed a motion to suppress identification on February 2, 2007,

prior to his first trial. The record reflects that the trial court held a hearing on appellant's

motion to suppress and denied the motion on July 11, 2007. Counsel raised the issue

again prior to appellant's second trial and the trial court noted appellant's objection but

held that its prior ruling on the matter would stand.

**{¶33}** In support of the present assignment of error appellant repeatedly cites the suppression hearing from July 9, 2007. However, a copy of the transcript from that 2007 hearing has not been included in the record.

**{¶34}** It is axiomatic that the party challenging a judgment has the burden to file an adequate record with the reviewing court to exemplify its claims of error. *Tabbaa v. Raslan*, 8th Dist. No. 97055, 2012-Ohio-367, ¶ 10.

**{¶35}** App.R. 9 requires the appellant, when urging on appeal that evidence was improperly admitted, or that a judgment is unsupported by the evidence, to include in the record a transcript of all evidence relevant to the findings or conclusions and to illustrate any alleged error by reference to them in the record. *State v. Wheeler*, 8th Dist. No. 61335, 1992 WL 328802, *1.

**{¶36}** When portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing court has nothing to pass upon and thus, as to those assigned errors, the court has no choice but to presume the validity of the lower court's proceedings, and affirm. *Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 199, 400 N.E.2d 384 (1980).

**{¶37}** Appellant's second assignment of error is overruled.

**{¶38}** Appellant asserts in his third assignment of error that the prosecutor at trial engaged in prosecutorial misconduct.

**{¶39}** Appellant argues that the prosecutor engaged in misconduct by (1) misusing a photo copy of the photo array exhibit used by Robert Sanders to identify appellant, (2) questioning Milton Franklin III about his religious association and the definitions of Islamic terminology, (3) insinuating that the appellant's expert witness, Dr. Solomon Fulero, was coerced during cross-examination and (4) making biased and prejudicial comments during closing argument thereby intensifying the relationship between the content of his tattoos and his guilt.

**{¶40}** The test for prosecutorial misconduct is whether the prosecutor's remarks or questions were improper, and if so, whether they prejudicially affected substantial rights of the accused. *State v. Hicks*, 194 Ohio App.3d 743, 2011-Ohio-3578, 957 N.E.2d 866, ¶ 30 (8th Dist.). A prosecutor's conduct during trial cannot be grounds for error unless the conduct deprives the defendant of a fair trial. *State v. Apanovitch*, 33 Ohio St.3d 19, 24, 514 N.E.2d 394 (1987). The focus of that inquiry is on the fairness of the trial, not on the culpability of the prosecutor. *State v. Bey*, 85 Ohio St.3d 487, 496, 1999-Ohio-283, 709 N.E.2d 484. "[G]iven the myriad safeguards provided to assure a fair trial, and taking into account the reality of the human fallibility of the participants, th*ere can be no such thing as an error-free, perfect trial*, and * * * the Constitution does not guarantee such a trial." *United States v. Hasting* (1983), 461 U.S. 499, 508-09, 103 S.Ct. 1974. (Emphasis added.)

**{¶41}** Our focus upon review is whether the prosecutor's comments violated appellant's substantial rights, thereby depriving appellant of a fair trial such that there is a

reasonable probability that, but for the prosecutor's misconduct, the result of the proceeding would have been different. *Hicks* at ¶ 30; *State v. Onunwor*, 8th Dist. No. 93937, 2010-Ohio-5587, at ¶ 42, citing *State v. Loza*, 71 Ohio St.3d 61, 641 N.E.2d 1082 (1994), overruled on other grounds. "We note, however, that a defendant's substantial rights cannot be prejudiced when the remaining evidence, standing alone, is so overwhelming that it constitutes defendant's guilt and the outcome of the case would have been the same regardless of evidence admitted erroneously." *Hicks* at ¶ 30, citing *State v. Williams*, 38 Ohio St.3d 346, 528 N.E.2d 910 (1988).

{¶42} Appellant argues that the prosecutor took from appellant's counsel a photocopy of a photo array containing a picture of appellant and his tattoos, marked it State's Exhibit 241, and improperly used the exhibit during Robert Sanders's testimony. Furthermore, Sanders confusingly testified that pencil markings on the exhibit were his own. Appellant's counsel did not object to the prosecutor's use of this document.

{¶43} Because the appellant failed to raise this objection during his trial, "he now waives all but plain error." *State v. Sutton*, 8th Dist. No. 90172, 2008-Ohio-3677, ¶ 33, citing *State v. Childs*, 14 Ohio St.2d 56, 263 N.E.2d 545 (1968). An error does not rise to the level of plain error unless, but for the error, the outcome of the trial would have been different. *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978). Under Crim.R. 52(B), plain error requires an obvious defect in the trial court proceeds that affected "substantial rights." *State v. Posa*, 8th Dist. No. 94255, 2010-Ohio-5355, ¶ 6. Notice of

plain error is to be taken with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978).

{¶44} The analysis of a plain error and prosecutorial misconduct both require the conduct to affect appellant's substantial rights. Even accepting as true appellant's contention that the prosecutor's actions in using the appellant's exhibit were improper, neither his rights were affected nor was he prejudiced because State's Exhibit 241 was a photocopy of the photo array originally shown to Sanders by the police and appellant's attorney cross-examined Sanders on the matter. Although Sanders initially testified that the pencil markings were his own, he eventually agreed that they may not be his markings. He was nonetheless positive that he chose the appellant in the original photo array.

{¶45} Appellant next argues that the state engaged in prosecutorial misconduct when the prosecutor questioned Milton Franklin III concerning his Kufi and beard, his father's religious association and the definitions of Islamic terms, including Assalaamu Alaykum, Mujahid and Jihad. "[I]t is improper for the state to rouse the jury to convict merely by exciting their indignation against the defendant, against defense counsel, or against the crime itself." *State v. Sawyer*, 8th Dist. No. 79197, 2002-Ohio-1095.

{¶46} Although we find the prosecutor's line of questioning to be of minimal relevance and straddling the line of impropriety, on this record we cannot find that Milton

Franklin III's answers rise to the level of reversible error, as these comments did not deprive appellant of a fair trial.

{¶47} Appellant next argues that the cross-examination of his expert witness, Dr. Soloman Fulero, was improper. In the cross-examination of Dr. Fulero, the prosecutor challenged Dr. Fulero's bias and character traits.

{¶48} Under Evid.R. 611(B), "[c]ross-examination shall be permitted on all relevant matters and matters affecting credibility." "The limitation of * * * cross-examination lies within the sound discretion of the trial court, viewed in relation to the particular facts of the case. Such exercise of discretion will not be disturbed in the absence of a clear showing of an abuse of discretion." *State v. Acre*, 6 Ohio St.3d 140, 145, 451 N.E.2d 802 (1983). However, "[i]t is improper for an attorney, under the pretext of putting a question to a witness, to put before a jury information that is not supported by the evidence." *State v. Smidi*, 88 Ohio App.3d 177, 183, 623 N.E.2d 655 (6th Dist. 1993).

{¶49} The prosecutor asked Dr. Fulero if his step-son was currently serving a prison sentence for committing a homicide and if he ever shipped marijuana in the 1970's in order to determine whether he had a potential bias against the state. The scope of cross-examination of an expert on "questions of the expert's bias and pecuniary interest and the admissibility of evidence relating thereto are matters that rest in the sound discretion of the trial court." *Calderon v. Sharkey*, 70 Ohio St.2d 218, 436 N.E.2d 1008, at syllabus (1982). Evid.R. 616(A) includes certain acceptable methods of impeaching

witnesses: "[b]ias, prejudice, interest, or any motive to misrepresent may be shown to impeach the witness either by examination of the witness or by extrinsic evidence."

{¶50} Because the prosecutor's cross-examination questions were made in order to determine Dr. Fulero's potential biases, the issue remains within the discretion of the trial court. We find no abuse of discretion based upon the record.

{¶51} Finally, appellant takes issue with comments made by the prosecutor during closing arguments. In general, prosecutors are given considerable latitude in opening and closing arguments. *State v. Ballew*, 76 Ohio St. 3d 244, 255, 1996-Ohio-81, 667 N.E.2d 369. In closing argument, a prosecutor may comment on "what the evidence has shown and what reasonable inferences may be drawn therefrom." *State v. Lott*, 51 Ohio St.3d 160, 165, 555 N.E.2d 293 (1990), quoting *State v. Stephens*, 24 Ohio St. 2d 76, 82, 263 N.E.2d 773 (1970).

> Prosecutors are granted wide latitude in closing argument to urge that the evidence presented and the only reasonable inferences to be drawn from that evidence point to the guilt of the accused. However, it is improper for the state to rouse the jury to convict merely by exciting their indignation against the defendant, against defense counsel, or against the crime itself. *State v. Nobles*, 106 Ohio App.3d 246, 270, 665 N.E.2d 1137 (2d Dist. 1995).

{¶52} Furthermore, a prosecutor may not express his personal belief or opinion as to the credibility of a witness, the guilt of an accused or allude to matters that are not supported by admissible evidence. *State v. Smith*, 14 Ohio St.3d 13, 14, 470 N.E.2d 883 (1984). The wide latitude given the prosecution during closing arguments "does not

'encompass inviting the jury to reach its decision on matters outside the evidence adduced at trial.'" *State v. Hart*, 8th Dist. No. 79564, 2002-Ohio-1084, citing *State v. Freeman*, 138 Ohio App.3d 408, 419, 741 N.E.2d 566 (1st Dist.2000).

{¶53} Appellant claims the prosecutor made biased and prejudicial remarks about the appellant's tattoos in order to inflame the jury. During his closing argument, the prosecutor stated:

> What do you think it takes, from your life experiences, to place this body art on yourself as a person; what statement are you trying to make? Stop and ask yourself that question. Mujahid, a rifle, swords, Jihad. Is that a statement of self expression of don't mess with me. I'm a warrior, I'm dangerous. I'm something that you don't want to mess with. I think the average person would agree with those statements.

{¶54} The prosecutor's insinuation that appellant intended his tattoos to express that he was "dangerous" or "something that you don't want to mess with" improperly indicated that appellant was an "Islamic warrior." However, the fact that the prosecutor engaged in some improper argument does not warrant reversal unless the remarks prejudicially affected substantial rights of the accused. *State v. Onunwor*, 8th Dist. No. 93937, 2010-Ohio-5587, ¶ 36. Prosecutorial misconduct will not provide a basis for reversal unless the misconduct can be said to have deprived the appellant of a fair trial based on the entire record. *Id.*, citing *State v. Lott*, 51 Ohio St.3d 160, 166, 555 N.E.2d 293 (8th Dist.1990). "The touchstone of analysis 'is the fairness of the trial, not the culpability of the

prosecutor.'" *State v. Gapen*, 104 Ohio St.3d 358, 2004-Ohio-6548, 819 N.E.2d 1047, ¶ 92, quoting *Smith v. Phillips*, 455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982).

**{¶55}** Using these standards, we see no basis for reversing appellant's conviction based on the prosecutor's comments. Even though some of the prosecutor's argument may have been improper, such comments did not pervade the entire trial, let alone the closing argument. We are unconvinced that the result of appellant's trial would have been different without the above excerpts of improper commentary by the prosecution. We conclude that the improper statements made by the prosecutor during closing arguments did not substantially prejudice appellant so as to deny him a fair trial.

**{¶56}** Appellant's third assignment of error is overruled.

**{¶57}** In his fourth assignment of error appellant argues that the trial court committed plain error by admitting irrelevant and prejudicial evidence.

**{¶58}** As a basic principle, all relevant evidence is admissible, unless the probative value of that evidence is substantially outweighed by its prejudicial effect. Evid.R. 403. "Relevant" evidence is defined as evidence having any tendency to make a fact of consequence to the determination of the action more or less probable than it would be without the evidence. *See* Evid.R. 401. The admission or exclusion of relevant evidence rests within the sound discretion of the trial court. *State v. Sage*, 31 Ohio St.3d 173, 510 N.E.2d 343 (10th Dist.1987). "[A] trial court's decision to admit or exclude evidence 'will not be reversed unless there has been a clear and prejudicial abuse of discretion.'"

*State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, 840 N.E.2d 1032, ¶ 122, quoting *O'Brien v. Angley*, 63 Ohio St.2d 159, 407 N.E.2d 490 (8th Dist.1980). "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (9th Dist.1983).

**{¶59}** Appellant argues that the State's questioning of Milton Franklin III regarding the meanings of certain Islamic terms was irrelevant and unduly prejudicial. We disagree. Milton Franklin III testified at trial that he is a Sunni Muslim. Franklin III testified that because of his religious background he recognized the Islamic terms tattooed on appellant's torso when he observed appellant dancing without his shirt and the terms had meaning to him. Appellant further testified that religion had no role in the events of the evening. Franklin III's testimony, as well as other witnesses' testimony regarding appellant's tattoos, was relevant to establish why the witnesses remembered appellant and his distinctive tattoos. As previously discussed, appellant's actions inside the bar, including his behavior on the dance floor and the removal of his shirt to display his tattoos, were the reasons that witnesses took notice of his face and remembered him. This is particularly true of Milton Franklin III, for whom appellant's tattoos had meaning. We cannot say that the trial court abused its discretion in allowing Franklin III's testimony.

**{¶60}** Finally, appellant reiterates several arguments previously addressed in the preceding three assignments of error and that do not appropriately fall under this

assignment of error. Appellant asserts that the trial court committed plain error during voir dire when the court referenced a prior trial's jury list in front of a juror. The record, however, reveals that the ambiguous reference occurred during a sidebar discussion between the court, counsel and the single juror and out of the hearing of the other jurors. Furthermore, at the request of appellant's counsel, and out of an abundance of caution, the trial court excused the juror for cause.

**{¶61}** Appellant's fourth assignment of error is overruled.

**{¶62}** Appellant's fifth, six, seventh and thirteenth assignments of error assert various errors in the trial court's jury instructions. We address these errors together.

**{¶63}** We review a trial court's issuance of a jury instruction for an abuse of discretion. *State v. Bagwell*, 8th Dist. No. 96419, 2011-Ohio-5841, ¶ 20, citing *State v. Williams*, 8th Dist. No. 90845, 2009-Ohio-2026. Further, jury instructions are reviewed in their entirety to determine if they contain prejudicial error. *State v. Fields*, 13 Ohio App.3d 433, 469 N.E.2d 939 (8th Dist. 1984).

**{¶64}** The trial court instructed the jury as follows:

Before you can find the defendant guilty of murder, you must find beyond a reasonable doubt that on or about the 4th day of September, 2005 and in Cuyahoga County, Ohio, the defendant purposely caused the death of Jerome Thomas.

Purpose is an essential element of the offense of murder. A person acts purposely when it is his specific intention to cause a certain result. It must be established in this case that at the time in question there was present in the

mind of the defendant a specific intention to cause the death of Jerome Thomas.

Purpose is a decision in the mind to do an act with a conscious objective of producing a specific result.

To do [an] act purposely is to do it intentionally and not accidentally. Purpose and intent mean the same thing. The purpose with which a person does an act is known only to himself, unless he expresses it to others or indicates it by his conduct.

The purpose with which a person does an act or brings about a result is determined from the manner in which it is done, the means or weapon used, and all of the other facts and circumstances in evidence.

If you find that the defendant did have a purpose to cause the death of a particular person, and that the shooting accidentally caused the death and/or injury of another person, then the defendant would be just as guilty as if the gunfire had taken effect upon the person intended.

The purpose required is to cause the death of another, not any specific person. If the gunfire missed the person intended but caused the death of another, the element of purpose remains and the offense is as complete as though the person for whom the gunfire was intended had died.

However, if there was no purpose to cause the death of anyone, the defendant cannot be found guilty of murder.

The state charges that the act or failure to act of the defendant caused the death of Jerome Thomas. Cause is an essential element of the offense of murder. Cause is an act or failure to act which in the natural and continuous sequence directly produces the death of another, and without which it would not have occurred.

The defendant's responsibility is not limited to the immediate or most obvious result of the defendant's act or failure to act. The defendant is also responsible for the natural and foreseeable consequences or results that follow in the ordinary course of events from the act or failure to act.

There may be * * * one or more causes of an event. However, if a defendant's act or failure to act was one cause, then the existence of other causes is not a defense.

**{¶65}** Specifically, in regards to Counts 2 and 3, the court instructed:

Before you find the defendant guilty of attempted murder in either one or both of these counts, you must find beyond a reasonable doubt that on or about the 4th day of September, 2005, and in Cuyahoga County, Ohio, the defendant did attempt to purposely cause the death of Marcus Barnes in the case of Count 2, and/or Rayshawn Whitsett in the case of Count 3.

Murder is the principle offense in the crime of attempted murder. Murder is purposely causing the death of another.

An attempt occurs when a person knowingly engages in conduct that, if successful, would result in the commission of the offense of attempted murder.

**{¶66}** In his fifth and thirteenth assignments of error appellant asserts that the trial court erroneously instructed the jury on transferred intent. Appellant claims that the trial court's instruction on transferred intent also constituted a constructive amendment of his indictment. We disagree.

**{¶67}** This court has previously rejected the argument that an instruction on transferred intent constitutes a constructive amendment of a defendant's indictment. *State v. Jackson*, 8th Dist. No. 76141, 2000 WL 426556, *13 (Apr. 20, 2000).

**{¶68}** Contrary to appellant's arguments, the transferred intent language used by the trial court is consistent transferred intent instructions we have previously upheld. *Id*.; *see*

*also Whiteside v. Conroy*, 10th Dist. No. 05AP-123, 2005-Ohio-5098, ¶ 5, 55; *State v. Scott*, 7th Dist. No. 02-CA-215, 2004-Ohio-5117, ¶ 21, 28.

**{¶69}** The evidence presented at trial established that appellant fired his gun into the bar's picture window with the intent to kill Milton Franklin III but, due to his poor aim, appellant killed Jerome Thomas and wounded Rayshawn Whitsett and Marcus Barnes. The instruction given by the trial court informed the jury that if the defendant intended to kill when he pulled the trigger, it did not matter whether he killed the intended target or an innocent bystander. Based on this evidence, an instruction on transferred intent was supported by the evidence in this case. Accordingly, appellant's fifth and thirteenth assignments of error are without merit and overruled.

**{¶70}** In his sixth assignment of error appellant argues that the trial court's instruction on transferred intent allowed the jury to convict him of murder based only on proof that he injured someone rather than caused a death. Appellant seizes solely upon the trial court's instruction regarding transferred intent. Appellant was charged not only with murder but also with two counts of attempted murder of those injured. The trial court provided a single instruction on transferred intent applicable to all counts. The trial court's instruction on transferred intent fit the circumstances of appellant's case. Furthermore, a single challenged jury instruction may not be reviewed piecemeal or in isolation but must be reviewed within the context of the entire charge. *State v. Shopshire*, 8th Dist. No. 85063, 2005-Ohio-3588, ¶ 23, citing *State v. Hardy*, 28 Ohio St.2d 89, 276

N.E.2d 247 (1971). Appellant's argument completely ignores the court's detailed instructions regarding the murder charge that explicitly required that the jury find that appellant caused the death of Jerome Thomas before he could be convicted of murder.

{¶71} Appellant's argument's sixth assignment of error is overruled.

{¶72} In his seventh assignment of error appellant argues that the trial court improperly instructed the jury on the definition of causation. We note that appellant failed to object to this definition at trial. Thus, absent plain error, the failure to object to jury instructions is a waiver of the issue on appeal. *See State v. Underwood*, 3 Ohio St.3d 12, 444 N.E.2d 1332 (1st Dist.1983), syllabus. Moreover, any error in the jury instructions is not plain error unless, but for the error, the outcome of the trial clearly would have been different. *Id*.

{¶73} Appellant argues that the trial court's causation instructions permitted the jury to convict him even if Jerome Thomas's death was caused by another person. The court's instructions at issue track the language employed in 4 Ohio Jury Instructions 2011. Despite appellant's contentions to the contrary, the trial court's instructions on causation were a proper statement of the law. *State v. Gross*, 97 Ohio St.3d 121, 2002-Ohio-5524, 776 N.E.2d 1061 (5th Dist.2002), ¶ 90. Appellant has not established plain error in this regard and his seventh assignment of error is overruled.

{¶74} In his eighth assignment of error, appellant argues that the trial court erred in failing to instruct the jury on various lesser included offenses.

**{¶75}** A charge on a lesser included offense is only required where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense. *State v. Collins*, 8th Dist. No. 95415, 2011-Ohio-3241, ¶ 35, citing *State v. Thomas*, 40 Ohio St.3d 213, 533 N.E.2d 286 (9th Dist.1988), paragraph two of the syllabus. The court must view the evidence in the light most favorable to the defendant when deciding whether to instruct the jury on a lesser included offense. *State v. Campbell*, 69 Ohio St.3d 38, 1994-Ohio-492, 630 N.E.2d 339. An instruction is not warranted, however, every time "some evidence" is presented on a lesser included offense. *State v. Smith*, 8th Dist. No. 90478, 2009-Ohio-2244, ¶ 12, citing *State v. Shane*, 63 Ohio St.3d 630, 590 N.E.2d 272 (5th Dist.1992).

> To require an instruction * * * every time some evidence, however minute, is presented going to a lesser included (or inferior-degree) offense would mean that no trial judge could ever refuse to give an instruction on a lesser included (or inferior-degree) offense. *Id.*, quoting *Shane* at 633.

**{¶76}** A trial court has discretion in determining whether the record contains sufficient evidentiary support to warrant a jury instruction on a lesser included offense; we will not reverse that determination absent an abuse of discretion. *State v. Henderson*, 8th Dist. No. 89377, 2008-Ohio-1631, ¶ 10, citing *State v. Wright*, 4th Dist. No. 01 CA2781, 2002-Ohio-1462.

**{¶77}** At trial, appellant requested that the trial court instruct the jury on reckless homicide in violation of R.C. 2903.041, negligent homicide in violation of R.C. 2903.05,

discharging into a habitation in violation of R.C. 2923.161 and aggravated assault in violation of R.C. 2903.12.

{¶78} As an initial matter, we note that improperly discharging firearm at or into habitation or school safety zone in violation of R.C. 2923.161 is not a lesser included offense of murder. In determining whether an offense is a lesser included offense of another, a court shall consider whether one offense carries a greater penalty than the other, whether some element of the greater offense is not required to prove commission of the lesser offense and whether the greater offense as statutorily defined cannot be committed without the lesser offense as statutorily defined also being committed. *State v. Cooper*, 8th Dist. No. 96635, 2012-Ohio-355, ¶ 13, quoting *State v. Evans*, 122 Ohio St.3d 381, 2009-Ohio-2974, 911 N.E.2d 889. As murder can be committed by means other than discharging a firearm into a habitation, the trial court did not err in refusing to instruct the jury on a violation of R.C. 2923.161.

{¶79} Similarly, we have previously noted that negligent homicide is not a lesser included offense of murder. *State v. Mathis*, 8th Dist. No. 91830, 2009-Ohio-3289, ¶ 14, citing *State v. Koss*, 49 Ohio St.3d 213, 219, 551 N.E.2d 970 (8th Dist.1990). The trial court did not abuse its discretion in refusing to instruct the jury on negligent homicide.

{¶80} Reckless homicide under R.C. 2903.041 is a lesser included offense of murder in violation of R.C. 2903.02. *State v. Benson*, 8th Dist. No. 87655, 2007-Ohio-830, ¶ 112. Reckless homicide differs from murder only in respect to the

culpable mental state. Rather than the "purposely" mental state required to support a conviction of murder, a conviction for reckless homicide requires proof only that the accused acted "recklessly." *Compare* R.C. 2903.02(A) and 2903.041(A). "A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature." R.C. 2901.22(C).

**{¶81}** As previously discussed in appellant's first assignment of error, the evidence at trial was that appellant acted purposely to cause the death of Milton Franklin III, following the angry confrontation between Franklin III, appellant and his brother that culminated in Franklin III, firing several "warning shots" in the direction of the two men. Even if the jury entirely disregarded the testimony of Milton Franklin III that appellant recognized him through the bar's picture window and began shooting at him, appellant's argument that his conduct was merely reckless fails. The mere act of shooting a gun into a crowd of people is sufficient to establish the purposefulness element of R.C. 2903.02(A). Appellant's purpose was established by the unrefuted testimony that appellant fired into a bar with a crowd slightly under its maximum occupancy. Given the totality of the evidence, we cannot say the jury could have reasonably acquitted appellant of the murder charge and found him guilty of the lesser-included offense of reckless homicide. Consequently, we agree with the trial court that the evidence did not warrant an instruction on reckless homicide.

{¶82} Similarly, appellant's argument that the trial court should have given an instruction on aggravated assault as a lesser included offense of attempted murder is without merit. Aggravated assault occurs only when a person, under extreme emotional stress, brought on by serious provocation, is incited to use deadly force and knowingly causes physical harm to another. *State v. Mabry*, 5 Ohio App.3d 13, 449 N.E.2d 16 (8th Dist. 1982).

{¶83} "Serious provocation" is defined as follows:

Provocation, to be serious, must be reasonably sufficient to bring on extreme emotional stress and the provocation must be reasonably sufficient to incite or to arouse the defendant into using deadly force. In determining whether the provocation was reasonably sufficient to incite the defendant into using deadly force, the court must consider the emotional and mental state of this defendant and the conditions and circumstances that surrounded him at the time. *Id*. at paragraph five of the syllabus.

{¶84} In the present instance, the testimony revealed that after the confrontation between appellant, his brother and Milton Franklin III, appellant and his brother retreated from the bar into the parking lot and Milton Franklin III had enough time to return to the bar and pour bleach on his hands in an effort to conceal any evidence of his discharging a firearm in the parking lot. Only later when the confrontation had completely ceased and Milton Franklin returned to the front of the bar intending to get into his car and leave, did appellant return and act purposefully in attempting to kill Milton Franklin III. Under these circumstances, we can cannot say that the trial court abused its discretion in refusing to instruct on aggravated assault.

**{¶85}** Appellant argues for the first time on appeal that the trial court should have instructed the jury on involuntary manslaughter in violation of R.C. 2903.13 and negligent assault in violation of R.C. 2903.14.

**{¶86}** As appellant offered no objections at trial to the trial court's failure to instruct on these offenses, he has waived all errors except plain error regarding these instructions. Crim.R. 52(B). Plain error as to jury instructions is proven when the outcome of the trial would have been different but for the alleged error. *State v. Campbell*, 69 Ohio St.3d 38, 1994-Ohio-492, 630 N.E.2d 339. We conclude plain error did not occur.

**{¶87}** Involuntary manslaughter is a lesser included offense of murder. *State v. Thomas*, 40 Ohio St.3d 213, 215, 533 N.E.2d 286 (1988). However, "an instruction on the lesser included offense of involuntary manslaughter will be given in a murder trial only when, on the evidence presented, the jury could reasonably find against the state on the element of purposefulness and still find for the state on the defendant's act of killing another." *Id*. at 216. As previously discussed, the element of purposefulness was established at trial. Therefore, an instruction on involuntary manslaughter would have been inappropriate.

**{¶88}** Finally, appellant's argument that the trial court committed plain error by failing to instruct on negligent assault is without merit. At least one court has held that negligent assault is not a lesser-included offense of attempted murder under Ohio law.

*State v. Egolf*, 11th Dist. No. 2000–L–113, 2003-Ohio-601, ¶ 35. The evidence at trial established that appellant acted purposely, not negligently in firing his weapon.

{**¶89**} Appellant's eighth assignment of error is without merit and overruled.

{**¶90**} In his ninth assignment of error appellant argues that the trial court erred in failing to merge his convictions as allied offenses of similar import. The record reflects that appellant failed to object to the court's imposition of multiple sentences and has, therefore, waived all but plain error.

{**¶91**} The Ohio Supreme Court has expressly held that the imposition of multiple sentences for allied offenses of similar import is plain error, *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923, ¶ 31, citing *State v. Yarbrough*, 104 Ohio St.3d 1, 2004-Ohio-6087, 817 N.E.2d 845, ¶ 96–102, and established the proper analysis for determining whether offenses qualify as allied offenses subject to merger pursuant to R.C. 2941.25 in *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, ¶ 48-50:

> In determining whether offenses are allied offenses of similar import under R.C. 2941.25(A), the question is whether it is possible to commit one offense and commit the other with the same conduct, not whether it is possible to commit one without committing the other. * * * If the offenses correspond to such a degree that the conduct of the defendant constituting commission of one offense constitutes commission of the other, then the offenses are of similar import.
>
> If the multiple offenses can be committed by the same conduct, then the court must determine whether the offenses were committed by the same conduct, i.e., "a single act, committed with a single state of mind."

If the answer to both questions is yes, then the offenses are allied offenses of similar import and will be merged.

**{¶92}** Appellant argues that his convictions for murder and attempted murder should have merged because Jerome Thomas, Marcus Barnes and Rayshawn Whitsett were not intended victims of the shooting and that the state's theory was that appellant intended to shoot only Milton Franklin III. In this argument, appellant relies upon this court's decision in *State v. Cartellone*, 3 Ohio App.3d 145, 444 N.E.2d 68 (8th Dist.1981). The defendant in *Cartellone* was charged with three counts of felonious assault as a result of shots fired at one particular victim while two potential victims arguably stood within range of the gunfire. In finding that the defendant in *Cartellone* lacked a separate animus for all three felonious assault convictions we explained,

> Under our facts, there is no evidence that Cartellone had any purpose or motive to harm anyone beside [the sole intended victim]. Nor is there any evidence that he had any knowledge of the presence of [bystanders] in the doorway. Since there was no consequential harm resulting to these two innocent bystanders, we cannot transfer the animus to harm [the intended victim] to [the bystanders], as we would have been called upon to decide had either [of the bystanders] been struck, in view of the well-established legal doctrine that a defendant is responsible for the natural and probable consequences of his acts. *Id.* at 149.

**{¶93}** We find appellant's reliance on *Cartellone* to be misplaced in the present instance. We specifically noted in *Cartellone* that we were not considering a situation analogous to the present case where, despite the shooter intending to strike only one victim who was in a crowded bar, other victims were struck by his poor aim. Appellant is correct

that under the theory of transferred intent his animus or intent is the same as to each of the victims. However, the Ohio Supreme Court has recognized that where a defendant commits the same offense against different victims during the same course of conduct and the offense is defined in terms of conduct towards another, then there is a dissimilar import for each person affected by the conduct. *State v. Franklin*, 97 Ohio St.3d 1, 2002-Ohio-5304, 776 N.E.2d 26, ¶ 48; *State v. Jones*, 18 Ohio St.3d 116, 480 N.E.2d 408 (1985). As such, appellant's argument that he was improperly convicted of allied offenses is without merit.

{¶94} Finally, appellant contends that having weapons while under disability is an allied offense of similar import to a firearm specification. This exact argument has been considered and rejected by this Court. *State v. Williams*, 8th Dist. No. 81949, 2003-Ohio-3950, ¶ 21; *State v. Whittsette*, 8th Dist. No. 70091, 1997 WL 67764 (Feb. 13, 1997), *6, citing *State v. Blankenship* (1995), 102 Ohio App.3d 534, 547, 657 N.E.2d 559 (12th Dist.1997).

{¶95} Appellant's ninth assignment of error is overruled.

{¶96} In his twelfth assignment of error appellant asserts that his trial counsel provided ineffective assistance of counsel. In order to prevail on a claim for ineffective assistance of counsel, the defendant must show (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80

L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). Counsel's performance may be found to be deficient if counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland* at 687. To establish prejudice, "the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *Bradley* at 143.

{¶97} In determining whether counsel's performance fell below an objective standard of reasonableness, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland* at 689. Because of the difficulties inherent in determining whether counsel rendered effective assistance in any given case, a strong presumption exists that counsel's conduct fell within the wide range of reasonable, professional assistance. *Id.*

{¶98} In considering a claim of ineffective assistance of counsel, an appellate court need not examine counsel's performance if the defendant fails to prove the second prong of prejudicial effect. *Bradley* at 143. "The object of an ineffectiveness claim is not to grade counsel's performance." *Id.*

{¶99} Appellant argues that his counsel was ineffective for failing to object to the trial court's jury instruction regarding transferred intent. However, the record reveals that appellant's counsel did, in fact, object to the transferred intent instruction. Furthermore, as discussed above in our resolution of appellant's fifth, sixth, seventh and thirteenth

assignments of error, the instruction was proper. In connection with this instruction appellant, citing *State v. Underdown*, 124 Ohio App.3d 675, 707 N.E.2d 519 (10th Dist.1997), argues that his counsel was ineffective for failing to request a jury instruction on the defense of accident. Appellant confuses the trial court's use of the term "accidentally" in its transferred intent instruction with the defense of accident referenced in *Underdown*. Unlike *Underdown*, the present case contains absolutely no evidence that appellant's shooting was the result of an accident instead of an intentional shooting with unintended victims.

{¶100} Appellant next argues that his trial counsel was ineffective for failing to object to the prosecutor's questions and closing arguments regarding his tattoos and the meaning of various Islamic terms. We note that appellant's counsel did in fact repeatedly object to the prosecutor's questioning of Milton Franklin III, regarding the meaning of these terms. As addressed in appellant's third and fourth assignments of error, this evidence was relevant to establish why various witnesses remembered appellant from the bar prior to the shooting and no prejudice to appellant resulted.

{¶101} Appellant also submits that his trial counsel was ineffective for failing to object to the trial court's response to a jury question. During deliberations, the jury asked the trial court if it could review a transcript of the testimony of Morris Sickles along with all of the witnesses' statements. Without objection from the state or appellant's counsel, the trial court instructed the jury to rely on their collective and individual memories of the

testimony along with the exhibits accepted into evidence. The Ohio Supreme Court has held that "[a]fter jurors retire to deliberate, upon request from the jury a court may, in the exercise of sound discretion, cause to be read all or part of the testimony of any witness * * *." *State v. Berry*, 25 Ohio St.2d 255, 267 N.E.2d 775 (1st Dist.1971). The trial court is under no mandatory obligation to do so, however, and we find no abuse of discretion in this instance. *State v. Moss*, 8th Dist. No. 81582, 2003-Ohio-3327, ¶ 29. Appellant's argument is without merit.

{¶102} Finally, appellant argues that his trial counsel was ineffective for failing to object to the trial court allowing the jury to review the statements of Rayshawn Whitsett and Milton Franklin, Jr., contained in exhibits 239 and 240. The record reflects that appellant's counsel did object to the admission of exhibits 239 and 240 and the state withdrew the exhibits. Appellant's argument is without merit.

{¶103} Appellant's twelfth assignment of error is overruled.

{¶104} Although not raised as an assignment of error, we find that the trial court neglected to impose sentences on each of the firearm specifications for which appellant was convicted.

{¶105} The trial court, in its sentencing entry, addressed only a "3-year sentence on the gun specification to run prior to and consecutive to 15 years to life in Count 1. All gun specifications merge for sentencing purposes."

{¶106} The appellant, however, was convicted of one- and three-year firearm specifications on each of the counts for which he was found to be guilty as to murder and attempted murder.

{¶107} We, therefore, remand this case to the trial court for the limited purpose of resentencing the appellant as to each of the firearm specifications.

{¶108} The judgment of the trial court is affirmed in part and reversed in part.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said lower court to carry this judgment into execution. The defendant's convictions having been affirmed in part, any bail pending appeal is terminated. Case remanded to the trial court for resentencing.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, JUDGE

KENNETH A. ROCCO, P.J., and
MARY EILEEN KILBANE, J., CONCUR

APPENDIX

*Assignment of Error No. 1:*

"Defendant was denied a fair and impartial trial in violation of due process of law, when the jury found the defendant guilty of murder based upon insufficient evidence."

*Assignment of Error No. 2:*

"Defendant was denied due process of law when the court overruled defendant's motion to suppress the identification procedure."

*Assignment of Error No. 3:*

"Defendant was denied due process of law when the court conceded the prosecutor's use of impropriety, improper calculations and prosecutorial misconduct."

*Assignment of Error No. 4:*

"Defendant was denied due process of law when the trial court committed plain error by admitting and allowing irrelevant and prejudicial evidence."

*Assignment of Error No. 5:*

"Defendant was denied due process of law when the court amended the statute and indictment by instructing on transferred intent."

*Assignment of Error No. 6:*

"Defendant was denied due process of law when the [sic] he was allowed to be convicted for causing an injury rather than death."

*Assignment of Error No. 7:*

"Defendant was denied due process of law when the court instructed on causation."

*Assignment of Error No. 8:*

"Defendant was denied due process of law when the court refused to instruct on reckless homicide, and negligent homicide."

*Assignment of Error No. 9:*

"Defendant was denied due process of law and subjected to unconstitutional multiple punishments when he was consecutively sentenced for murder, attempted murder, and a weapons violation."

*Assignment of Error No. 10:*

"Defendant was denied due process of law when he was allowed to be convicted of attempted murder without the testimony of the victim."

*Assignment of Error No. 11:*

"Defendant was denied due process of law when his motion for judgment of acquittal were overruled."

*Assignment of Error No. 12:*

"Defendant was denied effective assistance of counsel."

*Assignment of Error No. 13:*

"Defendant was denied due process of law when the court inform [sic] the jury defendant could be convicted for an accidental death or injury."